## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MICHAEL VADEN,                          )
                                        )
                 Plaintiff,             )
          v.                            )          Civil Action No. 14-0234 (TSC)
                                        )
U.S. DEPARTMENT OF JUSTICE,             )
                                        )
                 Defendant.             )
_____ )

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion to Dismiss (ECF No. 10) and

Plaintiff's Motion for Summary Judgment (ECF No. 12).[1]  For the reasons discussed below, the

complaint and this civil action will be dismissed.

### I.  BACKGROUND

Plaintiff, who had been "sentenced in the Superior Court [of] the District of Columbia,"

is in the custody of the Federal Bureau of Prisons ("BOP") after having violated the conditions of

his parole release.  Plaintiff's Motion for Summary Judgment ("Pl.'s Mot. for Summ. J.") at 2.

He "is . . . currently confined at the United States Penitentiary – II at the Federal Correctional

Complex, in Coleman, Florida."  Defendant's Memorandum of Points and Authorities in Support

of Motion to Dismiss ("Def.'s Mem."), Declaration and Certification of Records by Caixa Santos

("Santos Decl.") ¶ 5.

According to plaintiff, on July 1, 2013, he became aware of "custody classification points

contained within [his] male custody classification form[,] specifically the inconsistencies

_____
[1]   The Court denies Plaintiff's Motion for Summary Judgment and instead construes it as his
opposition to Defendant's Motion to Dismiss.

regarding various miss[c]ored subjects."  Complaint ("Compl."), Attachment ("Attach.") at 1.[2]

He contended that his base score, custody score, variance score and total score had been

calculated incorrectly, and that "the public safety factor [assigned to him] should have been

waived," *id*., Attach. at 1 (page numbers designated by plaintiff).[3]  Plaintiff alleges that the BOP

has "intentionally and willfully miscal[culated] points in [his] male custody classification form,"

*id.* at 5, such that he is designated to a more secure facility than is warranted, *see* Pl.'s Mot. for

Summ. J. at 2.[4]

   Plaintiff brings this action under the Privacy Act, *see* 5 U.S.C. § 552a, alleging that the

BOP fails to maintain its records pertaining to him with the level of accuracy, *see* Compl.,

Attach. at 3, required under 5 U.S.C. § 552a(e)(5).  He contends that, as a result, the BOP has

---

[2]  "Custody classification" is the process by which the BOP "assign[s] a custody level based on an inmate's criminal history, instant offense, and institutional adjustment."  Def.'s Mem., Ex. 3 (Program Statement 5100.08, Inmate Security Designation and Custody Classification (9/12/2006) ("P.S. 5100.08")), ch. 2, p. 2; *see* P.S. 5100.08, ch. 6, p. 1.  An inmate's "custody level (i.e., **COMMUNITY**, **OUT**, **IN**, and **MAXIMUM**) dictates the degree of staff supervision required for an individual inmate."  P.S. 5100.08, ch. 2, p. 2 (bold type in original).

[3]  A Public Safety Factor ("PSF") is applied to an inmate whose "demonstrated behaviors . . . require security measures to ensure the protection of society."  P.S. 5100.08, ch. 2, p. 4.  "[A]pplication of a PSF overrides security point scores to ensure the appropriate security level is assigned to an inmate based on his . . . demonstrated current or prior behavior."  *Id.*

[4]  The term "security level" describes:

> the structural variables and inmate-to-staff ratio provided at the various types of [BOP] institutions [and] identifies the institution type required to house inmates based on their histories, institutional adjustment, and Public Safety Factors as well as the physical security of the institution to include mobile patrols, gun towers, perimeter barriers, housing, detection devices, inmate-to-staff ratio, and internal security.

P.S. 5100.08, ch. 2, p. 5.  "[BOP] institutions are classified into one of five security levels: **MINIMUM**, **LOW**, **MEDIUM**, **HIGH**, and **ADMINISTRATIVE** based on the level of security and staff supervision the institution is able to provide."  P.S. 5100.08, ch. 1, p. 1 (bold type in original).

made a determination adverse to him in reliance on its records, Compl., Attach. at 4.  Plaintiff

demands injunctive relief through correction of the allegedly inaccurate records and designation

"to the appropriate security level facility."  *Id*. at 5.  He also demands monetary damages.  *Id*.;

*see id*., Attach. at 5.

## II.  DISCUSSION

### A.  *Plaintiff's Failure to Exhaust Administrative Remedies Does Not Bar This Action*

Defendant moves to dismiss the complaint on the ground that plaintiff failed to

exhaust his administrative remedies prior to filing this action as is required under the Prison

Litigation Reform Act ("PLRA"), *see* 42 U.S.C. § 1997e(a).  *See generally* Def.'s Mem. at 3-6.

In relevant part, the Prison Litigation Reform Act provides that:

> [n]o action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined to any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory and "applies to all prisoners

seeking redress for prison circumstances or occurrences."  *Porter v. Nussle*, 534 U.S. 516, 520

(2002); *see Jones v. Bock*, 549 U.S. 199, 211 (2007).  It requires proper exhaustion, meaning that

a prisoner must comply with procedural rules, including filing deadlines, as a precondition to

filing a civil suit in federal court, regardless of the relief offered through the administrative

process.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Booth v. Churner*, 532 U.S. 731, 741

(2001).  Thus, a prisoner may file a civil action concerning conditions of confinement under

federal law only after he has exhausted the prison's administrative remedies.  *See Jackson v.*

*District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).  Exhaustion under the PLRA is not a

jurisdictional requirement, however.  *See Jones*, 549 U.S. at 216; *Woodford*, 548 U.S. at 101.  It

is instead an affirmative defense, *Jones*, 549 U.S. at 216, which a defendant must plead and

prove, *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (quoting *Dale v. Lappin*, 376

F.3d 652, 655 (7th Cir. 2004)); *see Albino v. Baca*, 646 F.3d 1162, 1171 (9th Cir.), *cert. denied*,

135 S. Ct. 403 (2014).

An inmate first must "present[] an issue of concern informally to staff, and staff shall

attempt to informally resolve the issue before an inmate submits a Request for Administrative

Remedy." 28 C.F.R. § 542.13(a). "The [BOP] makes available a three level administrative

remedy process should informal resolution procedures fail to achieve sufficient results, under

which an inmate may seek formal review of an issue relating to any aspect of his/her own

confinement." Santos Decl. ¶ 3 (internal quotation marks omitted). The declarant describes the

process as follows:

> The first level of administrative remedy process review is begun by
> filing a Request for Administrative Remedy at the institution
> where the inmate is incarcerated. Should the inmate's complaint
> be denied at the institution level, the inmate may appeal by filing a
> Regional Administrative Remedy Appeal with the Regional Office
> for the geographic region in which the inmate's institution of
> confinement is located. For an inmate at FCC Coleman, this
> appeal would be filed with the Southeast Regional Office of the
> BOP in Atlanta, Georgia ("SERO"). If the Regional Office denies
> relief, the inmate can appeal to the Office of General Counsel via a
> Central Office Administrative Remedy Appeal. This is the third
> and final step of the process.

*Id*.

Plaintiff states that he became aware of the alleged miscalculation of custody

classification points on July 1, 2013, *see* Compl., Attach. at 1, and that he submitted an informal

resolution request on the following day, *see id*., Ex. (Informal Resolution Form dated July 2,

2013). The BOP's regulations provide that the deadline for completion of an informal resolution

and submission of a formal written Administrative Remedy Request on the appropriate form

("BP-9") to the Warden is 20 days from the date on which the underlying event occurred. 28

C.F.R. § 542.14(a). Thus, plaintiff's deadline for submission of a formal Administrative

Remedy Request would have fallen on or about July 21, 2013.

      According to plaintiff, he had not "received a response within the . . . time provision,"

and therefore he filed his formal written Administrative Remedy Request to the Warden on July

22, 2013. Pl.'s Mot. for Summ. J., Ex. 1 (Request for Administrative Remedy, Case Number

743584-F1 dated July 22, 2013). The Warden rejected the claim on the grounds that plaintiff

"did not submit [his] request through [his] counselor or other authorized person," and that he

"did not attempt informal resolution prior to submission of [the] administrative remedy" request.

*Id.*, Ex. 1 (Rejection Notice – Administrative Remedy dated July 24, 2013 regarding Remedy ID

743584-F1). Undaunted, plaintiff pursued an appeal to the Regional Office, *id.*, Ex. 1 (Regional

Administrative Remedy Appeal dated August 21, 2013), which rejected the appeal on the ground

that plaintiff did not "first file a BP-9 request through the institution for the warden's review and

response," *id.*, Ex. (Rejection Notice – Administrative Remedy dated August 27, 2013 regarding

Remedy ID 743584-R1). Similarly, plaintiff's appeal to the BOP's Central Office, *id.*, Ex. 1

(Central Office Administrative Remedy Appeal dated September 23, 2013), was rejected on the

ground that plaintiff had "submitted [his] request to the wrong level," *id.*, Ex. 1 (Rejection

Notice – Administrative Remedy dated October 28, 2013 regarding Remedy ID 743584-A1).

According to the Administrative Remedy Coordinator, plaintiff should have filed a BP-9 at the

institution for the Warden's review and response before filing an appeal. *Id.*

      Meanwhile, on August 23, 2013, plaintiff received a response to his informal remedy

request at which time his counselor issued him a BP-9 form. *See id.*, Ex. 1 (Informal Resolution

Form). On September 13, 2013, plaintiff submitted a second formal written Administrative

Remedy Request regarding his custody classification score, *see id.*, Ex. 4 (Request for

Administrative Remedy, Case Number 750131-F1 dated September 13, 2013), which was rejected as untimely because plaintiff had not submitted the request within 20 calendar days of the date of the matter about which he complained, *id.*, Ex. 4 (Rejection Notice – Administrative Remedy, Remedy ID 750131-F1, dated September 18, 2013).

Defendant asserts that plaintiff filed his first formal written administrative remedy request prematurely, "before he even heard back regarding the outcome of informal resolution." Def.'s Mem. at 2.  Thus, defendant contends, the BOP was "correct in denying [p]laintiff's administrative remedy request and subsequent related appeals because he did not wait for the outcome of informal resolution before filing those appeals." *Id*. at 3.  Therefore, defendant argues, this "case should be dismissed" because plaintiff "has not properly exhausted his administrative remedies regarding his custody classification points."  *Id*.

Although plaintiff had not exhausted his administrative remedies prior to the filing of this lawsuit, dismissal is not warranted under the circumstances of this case.  Plaintiff ably demonstrates his efforts to comply with the applicable regulations and filing deadlines.  He shows that he timely submitted an informal remedy request on July 2, 2013, that he did not receive a timely response from his correctional counselor, and that he attempted to meet the 20-day deadline by filing his first formal written Administrative Remedy Request on July 22, 2013. He further demonstrates his attempt to file a second formal written Administrative Remedy Request upon receipt – weeks later than the regulations allow – of the response to his informal remedy request.  The Court finds that plaintiff's failure to exhaust administrative remedies occurred through no fault of his own, and defendant's motion to dismiss on this basis will be denied.

B.  *Plaintiff Fails to State a Privacy Act Claim Upon Which Relief Can Be Granted*

According to plaintiff, the BOP is relying on information contained in his presentence investigation report ("PSI") that either is incorrect or is misinterpreted, yet still was factored into the scores for purposes of determining his custody classification and security level.  *See generally* Plaintiff's Opposition to Motion to the [Defendant's] Motion to Dismiss ("Pl.'s Opp'n") at 1-3.  As a result, plaintiff claims that he has been "place[d] in a higher security institution for a violation of parole when if corrected [he] should have been scored for a medium custody institution," Pl.'s Mot. for Summ. J. at 9, and thus has been placed in a "more hostel [sic] environment and life threaten[ing] situation [as] oppose[d] to being housed in a lesser security" facility.  *Id*. at 11.

Generally, "[t]he Privacy Act regulates the collection, maintenance, use, and dissemination of information about individuals by federal agencies."  *Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008) (internal quotation marks and citations omitted).  An individual may request access to and amendment of an agency's records or information in a system of records pertaining to him.  *See* 5 U.S.C. § 552a(d).  That individual may file a civil action against an agency which "makes a determination . . . not to amend [the] record in accordance with his request."  *Id*. § 552a(g)(1)(A).  The Privacy Act also requires that an agency "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as to assure fairness to the individual in the determination."  *Id*. § 552a(e)(5).  An individual may file a civil action if an agency:

> fails to maintain any record concerning any individual with such
> accuracy, relevance, timeliness, and completeness as is necessary
> to assure fairness in any determination relating to the
> qualifications, character, rights, or opportunities of, or benefits to
> the individual that may be made on the basis of such record, and

> consequently a determination is made which is adverse to the individual.

*Id*. § 552a(g)(1)(C).  If the Court determines that the agency's actions were willful or intentional, it may award actual damages sustained by the individual as a result of the agency's failure to maintain its records with the requisite level of accuracy, costs of the action and attorney fees.  *Id*. § 552a(g)(4).

"The agency obligations created by the Privacy Act are not absolute, however."  *Meyer v. Fed. Bureau of Prisons*, 940 F. Supp. 9, 134 (D.D.C. 1996).[5]  BOP regulations, for example, exempt the Inmate Central Records System (JUSTICE/BOP-005) from subsections (d) and (g) of the Privacy Act.  *See* 28 C.F.R. § 16.97(a)(1), (4).  An inmate's custody classification form is part of his Inmate Central File.  *See* BOP Program Statement 5800.11, <u>Inmate Central File, Privacy Folder and Parole Mini-Files</u> (12/31/1997) at 5, 7.  Consequently, insofar as plaintiff demands amendment under subsection (d) of any record maintained in the Inmate Central File – including a custody classification form – such relief is unavailable under subsection (g).  *See White v. U.S. Prob. Office*, 148 F.3d 1124, 1125 (D.C. Cir. 1998) (per curiam) (holding that appellant is "barred from seeking amendment of his presentence report" because "presentence reports and BOP inmate records systems are exempt from the amendment provisions of the

---

[5]  An agency head may promulgate regulations to exempt a system of records from any part of the Privacy Act other than subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i), if the system of records is:

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including . . . correctional . . . authorities, and which consists of . . . reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).

[Privacy] Act"); *Jennings v. Fed. Bureau of Prisons*, 657 F. Supp. 2d 65, 71 (D.D.C. 2009) ("Insofar as plaintiff demands amendment of any record maintained in the Inmate Central Files system, that is, amendment of the PSI, custody classification form, or security designation form, this relief . . . is unavailable."); *Register v. Lappin*, No. 07-CV-136, 2007 WL 2020243, at *3 (E.D. Ky. July 6, 2007) ("[A]ll information pertaining to [a prisoner's] security level and custody classification [is] maintained in the Inmate Central Records System, a system which has been exempted from subsections (d),(e)(5) and (g) of the Privacy Act by regulation.").

In addition, regulations exempt the Inmate Central Records System from subsection (e)(5).  *See* 28 C.F.R. § 16.97(j); *see also* 28 C.F.R. § 16.97(k)(2).  Because the BOP exempts the Inmate Central Records System from the substantive provision regarding the agency's recordkeeping obligations, there no longer is a remedy under the Privacy Act for harm resulting from inaccuracies in the inmate records.  *See Flores ex rel. Estate of Flores v. Fox*, 394 F. App'x 170, 172 (5th Cir. 2010) (per curiam) (denial of motion to amend complaint "to name the agency as the proper defendant" to Privacy Act suit for damages "would have been futile because in 2002, the BOP promulgated regulations exempting its Inmate Central Records System from § 552a(e)(5) and from § 552a(g), the civil remedies provision"), *cert. denied*, 131 S. Ct. 1797 (2011); *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam) (upholding dismissal of Privacy Act claims against BOP which had "exempted its Inmate Central Record System from the accuracy provisions of the Privacy Act, 5 U.S.C. § 552a(e)(5)"); *Earle v. Holder*, 815 F. Supp. 2d 176, 181-82 (D.D.C. 2011) ("It is settled that inmate records maintained by BOP, including presentence reports, have been exempted from the Privacy Act's accuracy and amendment requirements (subsections (d) and (e)(5)) and from its damages provision (subsection (g))."), *aff'd*, No. 11-5280, 2012 WL 1450574, at *1 (D.C. Cir. Apr. 20,

2012); *Conklin v. U.S. Bureau of Prisons*, 514 F. Supp. 2d 1, 6 (D.D.C. 2007) (concluding that "plaintiff effectively is barred from obtaining any remedy, including damages, under subsection (g), for the BOP's alleged failure to maintain records pertaining to him with the mandated level of accuracy").

### III.  CONCLUSION

Defendant's motion to dismiss will be denied in part because plaintiff's failure to exhaust his administrative remedies does not bar this action.  However, the motion will be granted in part because plaintiff's complaint fails to state a Privacy Act claim upon which relief can be granted.  Plaintiff's motion for summary judgment will be denied.  An Order accompanies this Memorandum Opinion.


DATE:  February 9, 2015                    /s/
                                           TANYA S. CHUTKAN
                                           United States District Judge